CITY OF WINCHESTER, Kentucky, Appellant,

v.

H. B. SPENCER et al., Appellees.

Court of Appeals of Kentucky.

Nov. 3, 1961.

Rehearing Denied Feb. 9, 1962.

Michael A. Rowady, Winchester, for appellant.

White & McCann, Winchester, for appellees.

MOREMEN, Judge.

Appellant, City of Winchester, condemned a right-of-way for a water transmission pipeline through a farm belonging to appellees, H. B. Spencer and Anna S. Spencer. The Spencer farm lies on the east side of the Boonesboro Road, just south of Winchester, and consists of 140 acres. It is adjacent to the golf course of the Winchester Country Club, an expensive subdivision, and a well-kept race horse farm. Just across the Boonesboro Road are located high priced modern homes. All parties agree that this farm is highly suitable for subdividing. The right-of-way condemned runs near the rear of the 140 acre farm on the opposite side of the farm from the Boonesboro Road, a distance of 2382 feet in a line which is situate in the average 132.5 feet from the rear property line. The easement is 30 feet in width and contains 1.94 acres of land. The strip between the easement and the rear property line contains 8.3 acres of land.

In order to describe the character of the easement obtained by the city we will list a few of its conditions and limitations. The city was given the right (a) to construct, maintain, alter, repair and rebuild the pipeline which had an outside diameter of 24 inches, (b) to ingress and egress over the remaining land, (c) to remove trees or other obstacles on the right of way, (d) to extend to the surface of the ground air valve boxes, gate valve boxes and blow-off discharge lines, but was required to locate them in places where they would offer only minimum interference with the cultivation of the land. (It was required that the water line be placed thirty inches below the surface of the ground.) The land owner was denied the right to (1) construct or permit to be constructed "any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of the pipeline or any appurtenance constructed hereunder," and (2) change the grade over the pipeline.

In the Clark County Court, after commissioners had reported, appellees were awarded the sum of $1,975. An appeal was taken to the Circuit Court where a trial resulted in a verdict for $5,500. From a judgment entered on that verdict, this appeal has been taken.

Appellant believes the judgment should be reversed because (a) the award was excessive, and (b) the testimony of appellees' witnesses was based on a false hypothesis and had no probative value.

At the trial appellee Spencer, in addition to being the owner of the farm, qualified as a real estate expert. He is the owner of several farms in Clark County and rental property in the City of Winchester. He has bought and sold real estate, and he evidenced considerable knowledge of such transactions. He estimated that the fair market value of the tract of land before the taking was about $155,000, and afterwards, about $145,000.

O. L. Hamilton, who has been a real estate broker and auctioneer for over twenty-five years, also placed the difference in the before and after value at $10,000.

R. F. McCready, who has appraised over a thousand tracts of land in Clark County, has developed several successful communities and has acted as a real estate broker many times and whom all parties seemed to recognize as being eminently qualified, fixed the difference in value at $6,144.

H. L. Jones, also a successful real estate broker and auctioneer, placed the difference in value at $6,726.

All of these witnesses skillfully and with full detail supported their estimates.

Appellant's witnesses placed the amount of the difference between the before and after fair market value at about $2,000.

It is argued by appellant that due to the fact that witnesses for appellees based their estimate of the value of the farm on the basis of its use as a potential subdivision and were of opinion that the transverse by this pipeline would damage about eight acres of ground for subdivision purposes, their testimony was based on an erroneous assumption because engineers introduced by the city were of opinion that the land was no less ideal for the purpose of subdividing because of the presence of the pipeline.

It is insisted that since neither Spencer, Hamilton, McCready nor Jones is a civil engineer, none of them is qualified to lay off the land in subdivisions and therefore their testimony is of no probative value. This argument is based on an erroneous impression that grew out of some of our opinions concerning the methods of valuation in condemnation cases. So far as we have been able to find, this court has strictly adhered to the rule that the true measure of damages is reached by determining the amount which would equal the difference in the fair market value of the entire property immediately before and after the easement is condemned. In connection with establishing the value before condemnation we have permitted various experts to use any pertinent elements which would assist in establishing that value. In cases where property has adaptability for particular uses which would result in an increased valuation, we have permitted this item to be considered as an element in assessing damages. For instance, in East Kentucky Rural Electric Cooperative Corporation, Inc., vs. Smith, 310 S.W.2d 535, where it was shown that farm land was reasonably adaptable and that there was expectation that in the near future it would be divided into town lots, it was held that that factor should be considered and the increased value used in estimating the true value of the land before the taking.

In Kentucky Utilities Company, Inc. vs. Barnett, Ky., 252 S.W.2d 12; Commonwealth vs. Crutcher, Ky., 240 S.W.2d 605; and Cranley vs. Boyd County, 266 Ky. 569, 99 S.W.2d 737, where it was shown that

city lots were adaptable to business purposes even though not used for the purpose at the time, such suitability was held to be an element properly to be considered in assessing damages.

■ Nevertheless there are many elements which must be considered in connection with establishing the true market value before and after the taking—not just adaptability for other uses. That is just one of the separate items which help form the integral estimates as to value. The composite of all elements by which the expert reaches his conclusion is acceptable as a true valuation. Here appellees' experts all testified that the land had been damaged for subdivision purpose in sums greater than the amount of the verdict. Appellant's experts thought it was less.

■ We have found the estimates given in behalf of appellees convincing, as did the jury, even though the valuations fixed differed from those fixed by witnesses for the city. This conflict was resolved by submission to the jury under instructions which have not been challenged as to correctness. The jury also visited the premises and formed its opinion as to the extent of the damage. Under the circumstances we see no reason to interfere with its verdict or the judgment based upon it.

Judgment affirmed.