C. R. DINWIDDIE et al., Appellants,

v.

URBAN RENEWAL AND COMMUNITY DE-
VELOPMENT AGENCY OF LOUIS-
VILLE et al., Appellees.

Court of Appeals of Kentucky.

June 25, 1965.

James T. Robertson, Louisville, for appellants.

Charles J. Lunderman, Jr., Robert W. Zollinger, Louisville, for appellee Urban Renewal.

Francis Pearl, Louisville, for Layman Bros. Wrecking Co. and Frank Layman.

HILL, Judge.

This is an appeal by C. R. Dinwiddie and Belle Liddell Dinwiddie, his wife, from a verdict and judgment of $77,250 in a condemnation proceeding instituted by appellee, Urban Renewal and Community Development Agency of Louisville, against the said appellants and the Phillips Petroleum Company, lessee.

Appellee, Urban Renewal, sought to condemn a lot 95$^{10}\!/\!_{12}$ x 200 feet, with a filling station thereon on the southeast corner of Seventh and Chestnut Streets in the city of Louisville.

Appellant's brief, under "Statement of the Questions Presented," presents twelve grounds for reversal. We shall not catalog them here but discuss such ones as we believe merit discussion.

■ This proceeding under KRS 99.420 is unlike our highway condemnation statutes, in that, this proceeding was filed originally in the Jefferson Circuit Court and the circuit court appointed commissioners. The commissioners so appointed

allowed appellants $81,500. Appellants filed no exceptions to the commissioners' report. It was 133 days from the filing of the suit until appellants filed their answer and counter-claim making Layman Brothers Wrecking Company and Frank M. Layman third-party defendants. In the meantime, the case had been tried in the circuit court and a verdict of $77,000 returned by the jury. Due to illness of the appellants, the trial court set aside the first verdict and judgment and granted a new trial. The trial court also entered an order allowing the answer to be treated as exceptions to the report of the commissioners. It may be observed also that appellants did not appear at the second trial and have been represented in most of this litigation by an attorney-in-fact. Appellants first question the constitutionality of KRS 99.420.

KRS 99.330 to 99.590 were enacted in 1950 to provide statutory authorization for urban renewal and redevelopment in the State of Kentucky. The purpose of such legislation, as announced in the statute, was to "promote the health, safety, and welfare of the people of the Commonwealth and particularly of the communities in which slum areas and blighted areas exist by the elimination of slum conditions and conditions of blight."

The foregoing statute was upheld by this Court in Miller v. City of Louisville, Ky., 321 S.W.2d 237 (1959).

The United States Supreme Court also upheld the constitutionality of a similar redevelopment act in the case of Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L. Ed. 27 (1954).

Appellants contend that their property was well kept, income producing and was in no way or manner to be classified as slum property and for that additional reason their property could not be taken without their consent.

In the Miller case, supra, it is said:

"While it is true that individual pieces of property in an affected area may be safe, sanitary and useful properties, yet their acquisition may be necessary to the accomplishment of the over-all plan."

This Court is now obliged to follow the ruling in the Miller and Berman cases, supra.

Appellants complain they were not allowed a review of determination by the Louisville Board of Aldermen that the area within the "West Downtown Renewal Area was slum or blighted area." We have carefully examined the issues presented by the answer and cross-claim and do not find any allegation that the action of the Louisville Board of Aldermen was arbitrary in its classification of appellants' property in its inclusion in the area in question. At any rate, a pretrial conference was held in this case, a transcript of which containing 55 pages has been filed with and made a part of this appeal. In this pretrial conference the trial judge plainly determined "That I would rather now decide this case that the Urban Renewal has a right to condemn this property * * * and that leads up to the final conclusion that this case will be ready for trial on its merits *of the value* on October 6th."

Again, during the trial before the jury, the court made this observation: "All right. That's a legislative matter and I will not pass on it." Had the question been properly raised in the trial court, that court would have been limited to a judicial review to discover whether or not the inclusion of the subject property was arbitrary, made in bad faith or was in excess of the powers conferred by the statute. Justice Douglas wrote in Berman v. Parker, supra, that:

"It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular

project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch."

See also State ex rel. Dalton v. Land Clearance for Redevelopment Authority of Kansas City, Mo., 270 S.W.2d 44, 52 (1954); Wilson v. City of Longbranch, 27 N.J. 360, 142 A.2d 837, 847 (1958); and Schenck v. City of Pittsburg, 364 Pa. 31, 70 A.2d 612, 614 (1950).

■ Had the contention been made that the ordinance was arbitrary or made in bad faith or that the area was not a blighted or slum area we think the burden would have been upon the appellants to substantiate such an allegation. This record does not show the appellants met such a burden. We conclude the trial court was correct in determining, as a matter of law, that the ordinance classifying the area as a slum area was valid in this respect.

■ Appellants complain because the report and award of the commissioners did not award any amount for improvements. Their report allowed the appellants $81,500 for land taken and the space provided for improvements contained the typewritten words "Not included." It is not clear whether the three commissioners did or did not intend the amount allowed for the land to include the improvements. We think, in view of their later testimony, they intended to include improvements. It is immaterial anyway because this Court has repeatedly held that the report of the commissioners is incompetent on the trial of the case before the jury. This complaint is without merit.

■ Appellants also complain that Garrette A. Emerson, Jr., was a necessary party and was not made a party defendant. The evidence shows that he transferred such interest as he had in the lease to the Phillips Petroleum Company and the latter was made a party in the original complaint. This contention, we think, is likewise without merit.

■ Perhaps the most stentorian objection is made to the amount of the verdict. As noted heretofore, the verdict was about $4,000 less than the award of the commissioners. However, the verdict was $5,000 more than the value fixed by the witness, Goodman. This witness used several comparable voluntary sales in the near vicinity of the subject property. It is true that a number of the witnesses for appellants testified the value of the property in question was well over $100,000. The value was sharply in issue and presented a question for the jury's determination. Again, we say the jury's verdict was not so inadequate as strike the mind at first impression as being grossly inadequate. We conclude appellants are not entitled to a new trial on this ground.

■ This Court is urged by appellants, in the alternative, to invoke the doctrine of "Additur," and raise the judgment to $95,000 on the theory Urban Renewal was authorized by its Atlanta office to offer this amount in purchase of the property in question. There was some discussion in chambers, before trial, that counsel for appellees "had authority to offer" $95,000. No such offer was made or accepted. Certainly, there was no offer made that would rise to the dignity of a tender or a judicial admission. Offers of compromise have generally never been admissible in evidence. Commonwealth, Dept. of Highways, v. Smith, Ky., 358 S.W.2d 487 (1962). Commonwealth, Dept. of Highways, v. Raleigh, Ky., 375 S.W.2d 384 (1964). Certainly, we cannot now dignify offers of compromise or "authority" to compromise as a basis for invoking "Additur," or as constituting a judicial admission. This jurisdiction has never adopted the doctrine of "Additur."

■ Appellants contend the trial court erred in giving summary judgment for Layman Brothers Wrecking Company, and Frank M. Layman. These parties were brought in by appellants, as noted above, on a charge they violated appellants' constitutional rights to keep their property intact pending appeal. The trial court entered an order authorizing the said parties to proceed with wrecking operations after the amount of the commissioners' report and award had been paid to the clerk of the court. True, Judge Schmidt, in the absence of Judge Downing, entered an order setting aside the first order authorizing possession of the property and wrecking operations, but the wrecking complained of had already been done under proper order of the court and did not justify any recovery of damages therefor. The court had the power under the statute to authorize possession upon payment into court of the award of commissioners.

■ Grievous error is assigned to the order overruling appellants' motion to read to the jury interrogatories propounded to J. D. Leeth, Executive Director of the Urban Renewal Agency in Louisville. Although we are furnished with no avowal or with the interrogatories, we gather from briefs for both parties that it was sought to show the selling or offering price of a tract, including the tract or a part of the tract here in question, to the Federal Government. Such evidence is clearly incompetent. Likewise, other purchases by Urban Renewal in the area were incompetent. Commonwealth of Kentucky, Department of Highways, v. Transamerican Freight Lines, Ky., 388 S.W.2d 574 (1965), wherein this Court said:

"Kentucky law has consistently recognized that sales consummated under these circumstances (sales to Urban Renewal) are not competent evidence of 'fair market value.'"

■ During the trial a question was raised before the jury whether the property in question was a "blighted" or "slum" area. In ruling on such question, the following exchange occurred:

"The Court: Objection sustained. The ruling has been made by the Board of Aldermen that this is a slum or blighted area? I am asking Mr. Zollinger. (Counsel for Urban Renewal).

"Mr. Zollinger: This is declared to be a blighted area by the Board of Aldermen—

"Mr. Robertson: Counsel, if Your Honor, please, is making a statement here, and he is making the decisions.

"The Court: No, the Board of Aldermen has ordered that, and we are not reviewing that question."

Appellants insist such comments by the trial judge in the presence of the jury were prejudicial to them, in that, the judge allowed counsel for Urban Renewal to answer the question, and upon the answer he announced the ruling. The trial judge went on to admonish the jury it was only trying the question of value. We think this occurrence was in no way prejudicial.

■ Finally, appellants assert the order of July 14, 1964, setting aside the judgment and granting a new trial because of the illness of appellants during the first trial was intended also to set aside the "interlocutory" judgment granting possession to Urban Renewal, and authorizing the wrecking of the buildings thereon. We think it is immaterial what the court intended by this order. Appellants were given a new trial. What occurred between the first judgment and the order of July 14th was duly authorized by proper order and appellants cannot complain. Appellants were timely apprised of the issue on September 25, 1964, eleven days before the trial date. We fail to see anything prejudicial in the order of July 14th. In fact, it was for the sole benefit of appellants.

Point 6, under "Statement of Questions Presented," mentions the "date of taking" fixed by the trial court to be March 27, 1961. The trial was commenced October 6, 1964. No contention is made that such "date of taking" was in any way prejudicial, for on page 40 of appellants' brief it is said: "Our point No. 6 is not too important on the date to fix the value of the property as of March 27, 1961, for we proved that the value was the same in 1961 as in 1964." Although the date of taking was erroneously fixed by the trial court, under Tharp v. Urban Renewal & Community Development Agency, Ky., 389 S.W.2d 453 (1965), yet, we conclude the error was harmless in view of the proof and the admission above.

A great many other points are superficially touched upon in appellants' brief which we have considered and found without merit. The judgment is affirmed.